CHAMBER OF COMMERCE OF KANSAS CITY, KANSAS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 71897. Filed January 13, 1961.

*Charles W. Lowder, Esq.*, for the petitioner.
*William J. McNamara, Esq.*, for the respondent.

FORRESTER, *Judge:* Respondent has determined a deficiency of $956.72 in the income tax of petitioner for the fiscal year ending

February 28, 1954, by taxing certain rent as "unrelated business net income." The parties are agreed that the sole issue for our determination is whether a so-called Escape and Penalty Clause Agreement executed 3 days after the lease constituted an option for renewal or extension within the terms of section 423, I.R.C. 1939.

### FINDINGS OF FACT.

Some of the facts have been stipulated and are so found.

Petitioner, an organization exempt from taxation under section 101(7),[1] is a corporation organized in 1918 under the laws of Kansas. It filed a nontaxable return (Form 990) for the fiscal year ended February 28, 1954, with the director of internal revenue for the district of Kansas at Wichita, Kansas.

Petitioner owns a building in Kansas City, Kansas, which prior to November 1952 housed its offices. On November 1, 1952, petitioner entered into an agreement with the Pyramid Life Insurance Company (Pyramid) under the terms of which it leased this building to Pyramid for the 46-month period November 1, 1952, through August 31, 1956, at a rental of $1,450 per month. Under paragraph 3 of this lease Pyramid agreed to keep the premises in good repair and to return the premises including all improvements to petitioner at the termination of the lease. Under paragraph 11 Pyramid could make any alterations, improvements, and repairs to the premises which it felt necessary, subject only to the requirement that they be "in good taste and in compliance to the Building Code of the City of Kansas City, Kansas."

Three days after making this lease petitioner entered into three separate supplemental agreements with Pyramid, each referring to the lease and each styled "Escape and Penalty Clause Agreement." The pertinent provisions of the first of these agreements follow:

IT IS COVENANT [sic] AND AGREED BY THE SAID CHAMBER AND THE SAID CORPORATION AS FOLLOWS:

1. If said Corporation shall, thirty days prior to the termination of said lease on the 31st day of August, 1956, request and ask the Chamber for a new lease of said premises under the same terms and conditions of the then existing lease, and the Chamber shall fail or refuse to enter into a lease agreement for fifty-nine (59) months with said Corporation, which proposed lease terminates on the 31st day of July, 1961, then and in that event within thirty days after the 31st day of August, 1956, the Chamber shall refund and pay to the Corporation one hundred percent of the costs of all capital improvements and moneys expended by said Corporation upon said building and premises.

2. In the event that the Corporation does not request and ask the Chamber for a new lease as provided for in Paragraph No. 1, then said Corporation shall not be entitled to any of the refunds provided for in Paragraph No. 1 and all of

---

[1] Unless otherwise noted, all Code references are to the Internal Revenue Code of 1939.

the capital improvements shall become the property of the Chamber and no refunds for any repairs, improvements or capital improvements shall be payable by the Chamber to the Corporation.

The second and third of these agreements are identical with the first except that in paragraph 1 they provide for renewals to June 30, 1966, and May 31, 1971, respectively, and require petitioner to pay 80 per cent and 60 per cent, respectively, of the cost of improvements and moneys expended.

At the time the lease and supplemental agreements were consummated, the parties understood that Pyramid intended to make extensive improvements to the premises, and as soon as Pyramid commenced occupancy of the premises it embarked upon an extensive improvement program. Within 3 or 4 months it had made numerous improvements and alterations to the building, including rewiring, air conditioning, repainting, lowering the ceilings, and installing heat ducts, all at a cost of approximately $86,400.

It is stipulated that on February 28, 1954, petitioner had supplement U lease indebtedness, within the meaning of section 423, I.R.C. 1939, with respect to the building leased to Pyramid.

OPINION.

The parties are agreed that if the so-called Escape and Penalty Clause Agreements amount to an option for renewal or extension of the lease in issue, within the meaning of section 423, that said lease is for a term of more than 5 years, and is a "supplement U lease" as defined by said section, and the net income earned upon it is "unrelated business net income" and so taxable to petitioner.

Respondent argues that each Escape and Penalty Clause Agreement constituted an "option" within the meaning of section 423 and that the renewal periods must therefore be added to the original period. We need consider only the first of said agreements of November 4, 1952, since its term, when added to the term of the lease, is more than 5 years.

Petitioner maintains a contrary position on the sole and simple ground, as we view it, that the word "option" is nowhere used in the agreement. We feel that the mere statement of such a contention demonstrates its obvious weakness.

The principal officer of Pyramid testified that his company never had intention of removing at the end of 46 months, had the right to ask for a renewal of the lease and always intended to ask for such renewal. There was no evidence that petitioner had any other understanding. There is no apparent need to encumber this opinion with lengthy hair-splitting definitions of "option." We simply observe that Pyramid spent over $86,000 on improvements contemplated by

both parties prior to the lease, and abandonment of these at the end of 46 months would increase its total rental costs for that period by more than 100 per cent and to approximately $153,000. It is thus unrealistic to argue that Pyramid did not always plan to seek a 59-month renewal of the terms of the original lease. It thus could, and always intended to, force petitioner to exercise its choice one way or the other. In any event, Pyramid had the election to abandon or seek to renew, and if it chose the latter course it could at least hold petitioner liable for 100 per cent of the cost of improvements and moneys expended on the property.

Viewing the coin from the other side, petitioner, when put to its choice, as it obviously would be, could elect to renew the lease for 59 months or pay Pyramid 100 per cent of the cost of improvements, etc., and it is axiomatic that the choice of extending or renewing a lease is an option, whether it reside in lessor or lessee. 2 Underhill, Landlord and Tenant, sec. 817–818 (1909) ; *Sylvan Mortgage Co.* v. *Astruck*, 199 N.Y.S. 438 (1923). See also 51 C.J.S., Landlord and Tenant, sec. 58(a), p. 601. Webster's New International Dictionary (2d ed.) defines "option" broadly as: "A stipulated privilege, given to a party, in a time contract * * *." Also cf. *Eimer & Amend*, 2 B.T.A. 603 (1925).

Thus, construing the lease together with the agreements referable to it in light of the obvious intent of the parties, the sum and substance is that petitioner had an "option" to renew within the meaning of section 423, no matter what shade of definition we place upon that term. While research has disclosed no cases yet dealing with said section, it is clear that its fundamental purpose is to prevent tax-exempt organizations from "trading on their tax exemption" so as to be able to offer long-term leases on better terms than could be offered by taxable organizations. H. Rept. No. 2319, 81st Cong., 2d Sess., pp. 38–39. It is hard to imagine a more obvious device to circumvent that purpose than the series of agreements here at issue. Indeed, the right of choice, residing as it does here in the lessor, the exempt organization, would seem to be even more clearly within the "option" concept of section 423 than would such a right in the lessee, for here it is the exempt organization itself which can guarantee to itself a lease for a period greater than 5 years, thereby obtaining the very advantage which Congress sought to prevent an exempt organization from acquiring.

We refuse to allow petitioner to avoid the provisions of section 423, requiring that an option be considered along with the original period of the lease, by the simple expediency of attaching another label to the option.

*Decision will be entered for the respondent.*